1

2

3

4

          UNITED STATES DISTRICT COURT

5

              DISTRICT OF NEVADA

6

DEBORAH ROWLEY,                   3:14-cv-00196-RCJ-WGC

7

                 Plaintiff,     **REPORT & RECOMMENDATION OF**

8

    v.                             **U.S. MAGISTRATE JUDGE**

9

CAROLYN W. COLVIN,
Acting Commissioner of

10

Social Security,

11

                 Defendant.

12

13      This Report and Recommendation is made to the Honorable Robert C. Jones, United

14  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

15  28 U.S.C.§ 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

16  Plaintiff's Motion for Remand. (Doc. # 11.)[1] Defendant Commissioner filed a Cross-Motion to

17  Affirm. (Doc. # 16.) No further briefing was filed by either party. After a thorough review, the

18  court recommends that Plaintiff's motion be granted and the Commissioner's motion be denied,

19  and the matter be remanded to the ALJ for the calculation and award of benefits.

20                   **I. BACKGROUND**

21      On August 11, 2004, Plaintiff applied for supplemental security income (SSI) under Title

22  XVI of the Social Security Act. (Administrative Record (AR) 216, 385-87.) According to the

23  record, this application was eventually denied. (AR 216.)

24      On December 20, 2005, Plaintiff filed a second application for benefits, this time for

25  disability insurance benefits (DIB) under Title II of the Social Security Act, and this application

26  was denied initially and on reconsideration. (AR 206, 208.)

27

28

---

[1] Refers to court's docket number. Unless otherwise indicated, all page number references are to the court's docketed page numbers.

On August 28, 2007, Plaintiff filed another application for benefits, under Title II (DIB) and Title XVI (SSI) of the Social Security Act. (AR 209-10.) The Commissioner denied Plaintiff's third application for benefits initially and on reconsideration, noting that she was last insured on September 30, 2003[2]. (AR 209-212, 264-280.) Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 284.) Plaintiff appeared with counsel and testified before ALJ Larry Kennedy on October 22, 2009. (AR 40-98.) Plaintiff gave testimony, along with vocational expert (VE) Susan Bachelder-Stewart, and witness Pamela Robin Shull (Plaintiff's friend). (*Id.*) ALJ Kennedy issued a decision denying Plaintiff's applications on December 18, 2009. (AR 213-237.) The Appeals Council vacated the decision and remanded the case back to the ALJ. (AR 238-241.)

On April 30, 2012, Plaintiff appeared with counsel and testified at a hearing before ALJ Eileen Burlison. (AR 99-164.) In addition, VE Kelly Bartlett and Plaintiff's friend Susan Waters gave testimony. (*Id.*) On June 12, 2012, ALJ Burlison issued a decision finding Plaintiff not disabled. (AR 242-257.) The Appeals Council also vacated this decision and remanded for further proceedings. (AR 259-263.)

On July 15, 2013, Plaintiff, represented by counsel, testified at a hearing before ALJ Burlison. (AR 165-205.) In addition, VE Diana Wong testified (AR 199-203.) The ALJ issued a written decision on August 7, 2013, finding Plaintiff not disabled. (AR 18-31.) Plaintiff appealed and the Appeals Council denied her request for review. (AR 1-7, 14.) Plaintiff now appeals the decision to the District Court. (Doc. # 11.)

First, Plaintiff argues that the ALJ erroneously evaluated the opinions of three non-examining State agency psychologists, Dr. Anita Peterson, Dr. Michael Regets and Dr. Bruce Eather, when the ALJ gave their opinions great weight without acknowledging that they opined Plaintiff was significantly more limited than the ALJ found and without explaining why she rejected those greater limitation opinions. (Doc. # 11 at 11-12.)

Second, Plaintiff argues that the ALJ erroneously assessed Plaintiff's education level at

---

[2] For DIB benefits, a claimant must have become disabled on or before the date his or her insured status expires. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). There is no such requirement for SSI benefits. Plaintiff acknowledges this, and it seems only seeks review of the ALJ's determination relative to her SSI claim.

1  step five as being "limited," when the evidence contradicted this determination and demonstrated

2  that her education level was more than "limited." (Doc. # 11 at 17-25.)

3  　　　　Third, Plaintiff argues that the ALJ erroneously evaluated the opinions of examining

4  psychologists Dr. Suk Choo Chang, Dr. Roger Meinz and Dr. Kerry Bartlett, and as a result

5  substantial evidence does not support the ALJ's RFC assessment, credibility finding or step five

6  decision. (Doc. # 11 at 25-27.)

7  　　　　Finally, Plaintiff argues that by adjudicating the merits of Plaintiff's disability claims

8  from her alleged onset date of March 14, 2002, the ALJ de facto reopened the initial denials of

9  Plaintiff's May 2007 DIB application, December 2005 DIB application, December 2005 SSI

10  application and August 2004 DIB application, which would otherwise have final and binding

11  determinations. (Doc. # 11 at 28-29.)

12  　　　　Plaintiff also mentions that the ALJ correctly did *not* find Plaintiff could work as a

13  fingerprint clerk, a third job identified by the VE, as that job would involve interaction with the

14  public. It is not clear why Plaintiff references a determination by the ALJ that Plaintiff is not

15  disputing; therefore, it will not be addressed in the court's analysis.

16  　　　　Conversely, the Commissioner argues: (1) that the ALJ properly considered the findings

17  of the State agency doctors in reaching her conclusion that Plaintiff was not disabled; (2) the ALJ

18  properly found Plaintiff had a "limited" education; (3) the ALJ properly evaluated the opinions

19  of the examining doctors; and (4) there is no basis for reopening Plaintiff's prior applications for

20  benefits. (Doc. # 16.)

21  **II. STANDARD OF REVIEW**

22  　　　　The court must affirm the ALJ's determination if it is based on proper legal standards and

23  the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

24  *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

25  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

26  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

27  24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

28  　　　　To determine whether substantial evidence exists, the court must look at the record as a

whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. Disability and the Five-Step Sequential Process

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

1    The Commissioner has established a five-step sequential process for determining whether

2    a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Garrison,* 759 F.3d at 1010

3    (citing *Ludwig v. Astrue,* 681 F.3d 1047, 1048 n. 1 (9th Cir. 2012)). If at any step the Social

4    Security Administration (SSA) can make a finding of disability or nondisability, a determination

5    will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4) and

6    § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "'The burden of proof is

7    on the claimant at steps one through four, but shifts to the Commissioner at step five.'" *Garrison*,

8    759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

9    2009)).

10    In the first step, the Commissioner determines whether the claimant is engaged in

11    "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

12    20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Bowen v. Yuckert*, 482 U.S. 137, 140

13    (1987). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds

14    to step two.

15    The second step requires the Commissioner to determine whether the claimant's

16    impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

17    § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

18    the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are

19    "the abilities and aptitudes necessary to do most jobs[,]" and include:

20    
21    
22    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

23    20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no

24    more than minimal functional limitations, the Commissioner will find that the claimant is not

25    disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(ii). If, however, the Commissioner

26    finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

27    In the third step, the Commissioner looks at a number of specific impairments listed in

28    20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's RFC and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitations, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not

disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144.

If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience in determining whether the claimant can do other work in the national economy. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert (VE) or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. The ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found, as step one, that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2003 (relevant to her DIB claim), and she had not engaged in substantial gainful activity since her alleged onset date of March 14, 2002. (AR 20.)

At step two, the ALJ found it was established that Plaintiff suffered from the following severe impairments: type I bipolar disorder, depressed without psychotic features (also diagnosed as major depression); posttraumatic stress disorder (PTSD) (also diagnosed as PTSD v. anxiety disorder); attention deficit disorder without hyperactivity/learning disorder; substance abuse disorder, in reported remission; borderline personality disorder by history; generalized anxiety disorder; asthma; chronic back pain with a pars interarticularis defect at L5 on the right (also diagnosed as myalgias and multiple joint pain); and obesity. (AR 20.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

1   impairments that met or medically equaled the severity of one of the Listed Impairments. (AR

2   21.)

3       At step four, the ALJ found Plaintiff has the RFC to perform light work with occasional

4   postural activities; she requires a reasonably clean environment avoiding gases and fumes; she

5   must avoid workplace hazards (working at heights and operating dangerous/moving machinery);

6   and she can perform simple, routine, repetitive work of a non-public nature. (AR 23.) The ALJ

7   then concluded Plaintiff was unable to perform any past relevant work. (AR 30.)

8       At step five, the ALJ considered Plaintiff's age (24 at the time of her alleged onset date),

9   "limited" education, work experience and RFC, and based on the testimony of the VE,

10  determined Plaintiff could perform other work that exists in significant numbers in the national

11  economy. (AR 30-31.) Specifically, the ALJ identified the positions of addresser (Dictionary of

12  Occupational Titles (DOT) 209.587-010) and mail clerk (DOT 209.687-026). (AR 31.) As such,

13  the ALJ found Plaintiff not disabled from her onset date of March 14, 2002, through the date of

14  the decision. (AR 31.)

15  **C. Non-Examining State Agency Psychologist Opinions**

16      **1. Plaintiff's Argument**

17      Plaintiff argues that the ALJ erred in evaluating the three non-examining State agency

18  psychologist opinions of Dr. Peterson, Dr. Regets and Dr. Eather, by assigning them great

19  weight, but not acknowledging they opined Plaintiff was significantly more limited than the ALJ

20  found and without explaining why she rejected those greater limitations opinions. (Doc. # 10 at

21  11-12.)

22      The ALJ found Plaintiff could perform simple, routine, repetitive work of a non-public

23  nature. (AR 23.) Dr. Peterson, Der. Regets and Dr. Eather all opined that Plaintiff was more

24  limited mentally than the ALJ determined. (Doc. # 11 at 13.) These nonexamining psychological

25  consultants opined that Plaintiff had the following additional limitations:

26      (1) Dr. Peterson: Plaintiff could persist at *three-step* repetitive work for extended periods

27          on a regular basis; work in a non-public setting with a *small group of co-workers* and

28          accept supervision; adapt to routine workplace demands and avoid hazards; and make

- 8 -

1     important decisions with guidance. (*Id*.)

2     (2) Dr. Regets: Plaintiff could follow tasks with *one or two step instructions*; had limits

3          in her ability to carry out detailed instructions and extended concentration and pace,

4          but could perform tasks after being given *one-on-one instruction*; could carry out

5          basic social interaction in a work setting, but would perform best in a setting with

6          *minimal intrusive supervision* and *limited contact with co-workers* and the general

7          public; and was capable of working in a *predictable work setting* with few changes in

8          expectations. (*Id*. at 14.)

9     Dr. Eather affirmed Dr. Regets' assessment. (AR 806.)

10    Plaintiff contends that the ALJ failed to give legally sufficient reasons for rejecting the

11    more restrictive portions of the opinions of Dr. Peterson, Dr. Regets and Dr. Eather. Instead,

12    Plaintiff argues that the ALJ improperly stated that these consultants only opined Plaintiff could

13    perform simple, routine and repetitive tasks with minimal contact with others. (*Id*. at 15.)

14    Plaintiff asserts that this error was harmful because the VE was not presented with a complete

15    and accurate hypothetical on which to base an opinion about Plaintiff's ability to work. (*Id*. at

16    17.)

17    **2. The Commissioner's Argument**

18    The Commissioner, on the other hand, argues that the ALJ properly considered the

19    findings of the State agency nonexamining consultants. (Doc. # 16 at 5-9.)  The ALJ noted that

20    the State agency doctors, who are experts in disability analysis, agreed Plaintiff could perform

21    simple, routine work and that Plaintiff's allegations of debilitating mental impairments were not

22    credible. (*Id*. at 5.) The Commissioner asserts that the ALJ was not required to adopt every

23    opinion of the reviewing doctors because it is the ALJ's responsibility, and not the doctors, to

24    determine RFC. (*Id*.) The Commissioner acknowledges that the ALJ must consider all of the

25    evidence before determining RFC, but contends the ALJ is not required to match the limitations

26    assessed by any particular source. (*Id*.)

27    In addition, the Commissioner asserts that the ALJ found Plaintiff could perform the jobs

28    of addresser and mail clerk, which the VE explained consisted of simple, repetitive tasks. (*Id*. at

7.) The Commissioner contends that Plaintiff has not identified limitations opined by these doctors that, if adopted by the ALJ, would have prevented Plaintiff from performing these jobs. (*Id.*) The Commissioner maintains that the ALJ based her RFC finding on an analysis of the record as a whole, which did not support disability. (*Id*. at 8.) The Commissioner further states that where the hypothetical posed to the ALJ included all of the limitations the ALJ found credible, the ALJ's reliance on the VE's testimony was proper. (*Id*. at 9.)

### 3. Analysis

Dr. Peterson's RFC assessment is dated May 1, 2006. (AR 601-03.) In the check-the-box portion of the assessment, she found Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal work day and week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. (AR 601-02.) Dr. Peterson found Plaintiff was markedly limited in her ability to interact appropriately with the general public. (AR 601-02.)

In the narrative portion of the assessment, Dr. Peterson discussed Plaintiff's history of diagnoses of depression and personality disorder, noting that the consultative examiner did not give a diagnosis "due to inconsistent effort." (AR 603.) Dr. Peterson indicated that the statements during the consultative examination regarding Plaintiff's distress level were "inconsistent with her recent report" to her primary care physician "that she is less depressed" on her current medications and is becoming more active. (AR 603.) Dr. Peterson noted Plaintiff was raising three sons under the age of ten as a single parent, volunteering, and performing housework as she is physically able. (AR 603.) She also attended church. (AR 603.) Dr. Peterson went on to state that the consultative examiner opined Plaintiff possibly qualified for SSI based on past diagnoses, "but d[id] not describe specific functional limitations that preclude work." (AR 603.) Dr. Peterson opined that Plaintiff "is credible for depression, anxiety and emotional reactivity,

but retains capacity for work." (AR 603.) She further opined Plaintiff could: "persist at 3-step repetitive work for extended periods on regular basis;" "work in a non-public setting with a small group of coworkers and is able to accept supervision"; and "can adapt to routine demands of workplace and avoid hazards" and can "make important decisions with guidance." (AR 603.)

Dr. Reget's RFC assessment is dated January 9, 2008. (AR 801-803.) In the check-the-box portion of the assessment, Dr. Reget said Plaintiff was moderately limited in her: ability to understand and remember detailed instructions, and her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to complete a normal work day and week without interruptions from psychologically based symptoms and perform at a persistent pace without an unreasonable number and length of rest periods; her ability to interact appropriately with the public; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and her ability to respond appropriately to changes in the work setting. (AR 801-02.)

In the narrative portion of the assessment, Dr. Regets noted that Plaintiff cares for three sons, which she reported she struggled with daily. (AR 803.) Her memory appeared in the normal range. (AR 803.) She had periods of hypomanic behavior, such as buying things she did not need and feeling angry and depressed afterwards. (AR 803.) She tended to isolate and needed help with grocery shopping. (AR 803.) Dr. Regets noted that the consultative examiner described her as resilient, and that she reportedly would like to work serving other people despite her unfortunate past. (AR 803.) Dr. Regets stated that Plaintiff appears capable of "SRT" (simple, routine tasks) with limited social contact and limited stress. (AR 803.) Dr. Regets assessed Plaintiff with: limitations in ability to understand and remember detailed instructions, but can follow tasks with one or two step instructions; limited in the ability to carry out detailed instructions and extended concentration and pace, but can perform tasks after one-on-one instruction; capable of carrying out basic social interaction in a work setting, but would perform best in a setting with minimal intrusive supervision and limited contact with coworkers and the general public; and is capable of working in a predictable work setting with few changes in

1    expectations. (AR 803.)

2         As Plaintiff indicated, Dr. Eather simply affirmed Dr. Regets' assessment. (AR 806.)

3         The ALJ assigned "great weight" to these State agency nonexamining psychological

4    consultants, stating: "their findings are generally consistent with the above evidence. According

5    to the consultants, the claimant was capable of performing simple, routine, and repetitive tasks

6    with minimal contact with others." (AR 28.) The RFC determined by the ALJ stated that Plaintiff

7    "can perform simple, routine, repetitive work of a non-public nature." (AR 23.) The hypothetical

8    posed to the VE was similarly limited to "work which is simple, routine, and repetitive and

9    which is nonpublic." (AR 200.)

10        In her RFC determination, the ALJ seemingly ignored the additional restrictions

11   announced by these consultants, in particular the restrictions proffered by the consultants

12   limiting Plaintiff to tasks involving from one or two to three step instructions (Dr. Peterson and

13   Dr. Regets), after receiving one-one-one instruction (Dr. Regets), and limiting her contact with

14   co-workers (Dr. Regets) or working on in small groups of co-workers (Dr. Peterson).

15        The Commissioner is correct that the ALJ is responsible for determining RFC,

16   *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545), however,

17   the examining psychological consultants' opinions are opinion evidence. *See* 20 C.F.R.

18   § 404.1527(e) and § 416.927(f). The ALJ is not bound by these opinions, but because these

19   consultants are "highly qualified … psychologists … who are also experts in Social Security

20   disability evaluation. …administrative law judges must consider findings and other opinions of

21   State agency medical and psychological consultants…" 20 C.F.R. § 404.1527(e)(2)(i). While the

22   ALJ need not discuss every piece of evidence in the record, she "must explain why 'significant

23   probative evidence has been rejected." *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.

24   1984) (citing *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). The ALJ is obligated to "'set

25   forth [her] own interpretations and explain why they, rather than the doctors', are correct.'"

26   *Garrison v. Colvin,* 759 F.3d 995, 1012  (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d

27   715, 725 (9th Cir. 1998)).

28

The ALJ did not mention these additional restrictions in her decision. Nor did she state whether or why she was rejecting them. These additional restrictions are not mentioned in the ALJ's RFC assessment or in the hypothetical posed to the VE. The RFC limits Plaintiff to simple, repetitive tasks, but did not include the additional limitation that those tasks only consist of between one and three steps, or that they be preceded by one-on-one instruction. Nor does the RFC specifically reflect the restrictions regarding Plaintiff's interaction with co-workers. The RFC limits Plaintiff to work of a nonpublic nature, but it is not clear that interaction with the public and interaction with co-workers and supervisors are one in the same.

The Commissioner argues that any error committed by the ALJ in this regard is harmless because Plaintiff has not identified limitations opined by these nonexamining psychologists that, if adopted by the ALJ, would prevent Plaintiff from performing the jobs identified by the VE and the ALJ that Plaintiff was capable of doing in the national economy−addresser and mail clerk. (*See* Doc. # 16 at 7.) The Commissioner references job descriptions for these two occupations contained within the DOT in support of her position. (Doc. # 16 at 7 n. 2.) Addresser is described as follows: "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT 209.587-101. Mail clerk is described as follows: "[s]orts incoming mail for distribution and dispatches outgoing mail." DOT 209.687-026.  The descriptions of the jobs do not shed any light on whether Plaintiff could perform them if she were limited with respect to her ability to interact with supervisors and co-workers. Nor do these descriptions provide any insight as to whether they involve more tasks consisting of more than between one and three steps.  While it may be that a "simple" task encompasses tasks with between one and three steps of instruction, neither the hypothetical to the VE nor the ALJ's RFC determination discussed the limitation that Plaintiff receive one-one-one instruction.

The "hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r of Soc. Sec. Amin.*, 574 F.3d 685, 690 (9th Cir. 2009) (citation and internal quotation marks omitted) (emphasis original). "Thus, an RFC that fails to take into account a claimant's limitation is defective." *Id*.; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The

hypothetical the ALJ posed to the VE did not take into account these additional limitations. Nor did the ALJ cite any reasons for finding these additional limitations incredible as the Commissioner suggests. Therefore, the ALJ erred and the RFC is defective.

**D. Education**

**1. Plaintiff's Argument**

The ALJ found that Plaintiff had "limited" education, defined in the regulations generally as 7th through 11th grade level of formal education. 20 C.F.R. 404.1564(b)(3). The regulations further provide that the numerical grade level will be used to determine a claimant's education level even though it might not represent the claimant's actual abilities *in the absence of contradictory evidence*. 20 C.F.R. 404.1564(b).

Plaintiff completed 9th grade taking special education courses, and attended community college where she received accommodations for her learning disabilities; however, Plaintiff argues this was not dispositive of her education because there was significant evidence in the record that contradicted using her numeric grade level to assess her education level at step five. (Doc. # 11 at 19.) First, in May 2013, Ms. DePedro reported Plaintiff spelled at a 2nd grade level, and had reading comprehension at the 5.5 grade level. (*Id.*) Ms. DePedro stated that Plaintiffs "current reading level suggests that she might be able to learn site words and functional signs at a job." (*Id.* at 20.) Plaintiff contends that the ALJ did not acknowledge or evaluate this testing.

Second, in May 2004, examining psychologist Dr. Meinz reported Plaintiff read at the 5th grade level, and spelled at the 2nd grade level and was diagnosed with a reading disorder (5th grade level) and disorder of written expression (2nd grade level); yet, the ALJ did not mention Dr. Meinz's testing results. (*Id.*)

Third, in May 2009, Dr. Bartlett reported that testing showed a Verbal IQ of 77, 5.5 grade level letter-word identification, 2.5 grade level word attack, and 4.5 grade level passage comprehension, which the ALJ did not address. (*Id.* at 22.)

Finally, in February 2007, psychologist Dr. Spring reported that testing revealed Plaintiff read at the 4.1 grade level (1st percentile); had 9th percentile spelling and word attack; her broad

written language score was in the 21st percentile; her writing fluency was in the 37th percentile; her broad math was in the 21st percentile and her calculation was in the 40th percentile. (*Id.* at 21.) Dr. Spring said her weaknesses were typical of a person with dyslexia. (*Id.*) She had a verbal IQ of 75. (*Id.*) Dr. Spring diagnosed a learning disorder, and stated Plaintiff used a device to help her read. (*Id.* at 22.) Plaintiff argues that the ALJ generally noted the testing, but did not acknowledge or evaluate the 4.1 grade reading level or the 9th percentile spelling and findings consistent with dyslexia. (*Id.*)

Plaintiff argues that these errors were harmful as the ALJ asked the VE to identify occupations that could be performed by a person with a ninth grade education, but did not ask the VE to identify occupations consistent with a 4th or 5th grade reading level or for someone with dyslexia or a limited ability to spell. (*Id.* at 22-23.) Plaintiff further contends that the occupations identified by the VE, addresser and mail clerk, involve significant reading and writing. (*Id.*) She points out that both of these jobs have a DOT language level 2 which requires a passive vocabulary of 5000 to 6000 words, a reading rate of 190-215 words per minute, an ability to read adventure stories and comic books and to look up unfamiliar words in the dictionary, as well as the ability to write compound and complex sentences, use proper end punctuation and employ adjectives and adverbs. (*Id.* at 24.)

Finally, Plaintiff argues that if she needed an accommodation for her reading disorder to perform an occupation, the occupation is irrelevant at step five as a matter of law because accommodations are not considered at step five even if an employer would be required to provide them under the Americans with Disabilities Act. (*Id.* at 24-25.)

**2. The Commissioner's Argument**

The Commissioner argues that the ALJ correctly determined Plaintiff did in fact have a "limited" education for purposes of assessing her ability to work. (Doc. # 16 at 9.) Even assuming there was conflicting evidence regarding Plaintiff's education, the Commissioner contends that the ALJ's decision is still supported by substantial evidence and is free of legal error. (*Id.*) The Commissioner asserts that the ALJ, as well as many of Plaintiff's doctors, found Plaintiff was not credible. (*Id.*) The Commissioner further argues that the evidence Plaintiff

points to is contradictory and includes doctors' observations that Plaintiff was exaggerating her symptoms and putting forth poor effort when testing her cognitive abilities. (*Id.*) With this evidence that Plaintiff was exaggerating, the Commissioner states that it was more reasonable for the ALJ to rely on Plaintiff's formal educational testing rather than her claimed educational abilities. (*Id.*)

### 3. Analysis

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v), (g). The regulations state that "[e]ducation is primarily used to mean formal schooling or other training which contributes to [the claimant's] ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. § 404.1564(a). A lack of formal schooling "does not necessarily mean that [the claimant] … lack[s] these abilities" as "[p]ast work experience and the kinds of responsibilities [the claimant] had when [the claimant was] working" may show the claimant's ability to adjust to other work. *Id.* The claimant's "daily activities, hobbies, or the results of testing may also show that [the claimant] ha[s] significant intellectual ability that can be used to work." *Id.* "[T]he numerical grade level … completed in school may not represent [the claimant's] actual educational abilities. These may be higher or lower." 20 C.F.R. § 404.1564(b). That being said, the numerical grade level will be used to determine a claimant's educational abilities, *unless* there is other evidence to contradict the formal grade level as an indicator of Plaintiff's intellectual abilities. *Id.*

Here, at step five, the ALJ determined Plaintiff had a "limited" education. (AR 30.) The regulations define "limited" education as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). Seventh through the eleventh grade level of formal education is generally considered a "limited" education. *Id.* Consistent with this finding, the hypothetical posed to the VE by the ALJ stated that Plaintiff was ninth grade educated. (AR 200.) Based on the VE's testimony, the ALJ

1   concluded Plaintiff could perform other work as an addresser or mail clerk and was not disabled.

2   (AR 31, 200-201.)

3       Plaintiff acknowledges she completed the ninth grade with special education classes

4   (Doc. # 11 at 19); however, she argues that her numerical grade level was not dispositive of her

5   education level because there was evidence in the record that contradicts her assessed education

6   level. (*Id*.)

7       As Plaintiff points out, she underwent a vocational evaluation on April 17, 2013, and a

8   report was issued on May 2, 2013. (AR 1108-1110.) She was administered the Wonderlic

9   Personnel Test which tests "general cognitive ability" and she scored in the "borderline" range.

10  (AR 1108.) On the Reading Index-12 test, which is used to measure the current level of reading

11  comprehension, Plaintiff's reading comprehension was assessed at the 5.5 grade level, stating

12  that "she might be able to learn site words and functional signs on a job." (AR 1109.) The

13  WRAT 3 test measures spelling and number computation skills, and Plaintiff was assessed at the

14  2nd grade level in spelling, and 7th grade level in math. (AR 1109.)

15      The ALJ mentioned the "borderline" result on the Wonderlic Personnel Test, and said

16  this was consistent with the RFC to perform simple, routine and repetitive tasks (AR 28-29), but

17  did not mention any of the other test results from this evaluation, including Plaintiff's 5.5 grade

18  level reading comprehension score or 2nd grade level spelling score. This evaluation does not

19  contain any of the observations of exaggeration that the Commissioner points to in her response

20  to Plaintiff's motion to suggest that the ALJ was justified in her educational assessment of

21  Plaintiff. Instead, the evaluation states that "[t]he results should be considered a valid estimate of

22  [Plaintiff's] opinions and abilities at the time of the evaluation." (AR 1108.)

23      On May 14, 2009, Plaintiff underwent a psychological evaluation with Dr. Kerry T.

24  Bartlett. (AR 904-911.) She was administered the Woodcock-Johnson Dictation Subtest which

25  revealed spelling skills approaching the 4th grade level, and was assessed as a 5.5 grade level in

26  word recognition; a grade 2.5 level in the ability to apply phonics skills in the pronunciation of

27  unknown words; and a 4.5 grade level in her ability to comprehend relatively brief reading

28  passages. (AR 908.) Her ranking on the WAIS-III test was below average, "with a significant

discrepancy between a borderline range ranking for the Verbal domain versus an average range ranking for the predominantly visual Performance domain." (AR 908.) Dr. Bartlett opined that Plaintiff "is not a viable candidate for stable placement in any full or part-time competitive employment circumstance… In fact, I question her ability to maintain even the basic consistency for attendance and performance associated with many volunteer settings." (AR 909.) In addition, according to Dr. Bartlett:

> [Plaintiff's] performances on cognitive screening did suggest severely compromised verbal expressive and receptive skills, with associated severe deficiencies for reading, spelling, and math, and her working recall and affective instability are such that it would not be expected that she could cope with even relatively straightforward and predictable interactive demands either on the job with co-workers or with customers.

(AR 909.)

The ALJ noted Dr. Bartlett's opinion that Plaintiff had "severely compromised expressive and receptive skills, with associated deficiencies for reading, spelling, and math," but found this was inconsistent with the overall treatment record, stating that Plaintiff scored well in math calculation and average in writing on an earlier examination for learning disabilities. (AR 28.) While Plaintiff may have scored better in math calculation and average in writing on one earlier examination, the ALJ ignores the profound deficiencies noted with respect to Plaintiff's reading and spelling abilities, which are repeated in most every other test of this kind administered to her. Moreover, in the earlier test the examiner noted that Plaintiff's math score was "relatively strong," but she still only scored in the 21st percentile for broad math. (AR 670, 675.)

Plaintiff underwent an evaluation for learning disabilities in January 2007. (AR 666-677.) The examiner noted that reading was "extremely difficult" for Plaintiff; she "doesn't understand or remember what she reads;" "does better answering questions in class when the aide reads to her;" and "was able to pass her Driver's test only when it was administered orally." (AR 666.) Plaintiff also reported that math and writing were difficult: "[w]hen she writes, things get out of sequence and her spelling is very bad." (AR 666.)

On the WAIS III test, Plaintiff scored in the 5th percentile for vocabulary, and in the 16th percentile for arithmetic and comprehension. (AR 669.) It was noted that Plaintiff's "scores on

the subtests requiring verbal reasoning vary little, and her performance is below that of her peers." (AR 672.) Specifically, "[h]er Verbal Comprehension Index, her ability to understand and respond to verbally presented material, is at or better than only 4% of her age-based peers." (AR 672.) "A relative weakness in comprehending verbal information may impede [Plaintiff's] ability to learn new material." (AR 672.)

On the Woodcock Johnson III test, she scored in the 9th percentile for broad reading, in the 21st percentile for broad math, and in the 16th percentile for broad writing (with a 9th percentile scoring in spelling). (AR 670.) She was in the 11th percentile for letter-word identification and the 9th percentile for word attack. (AR 670.) She was ranked in the 34th percentile for written expression; the 12th percentile for academic skills, and the 7th percentile for academic fluency. (AR 670.) It was indicated that "[t]hese weaknesses are typical of a person with dyslexia." (AR 673.)

The examiner also stated that Plaintiff had symptoms of "Scotopic Sensitivity" and found that "the use of a green overlay, non-glare side up, is helpful. However, she chose to use it only some of the time for testing." (AR 674.)

With respect to the Nelson-Denny Reading Test, it was noted that "[r]eading is very laborious for [Plaintiff]." (AR 674.) Her grade equivalence on this test was 4.1, placing her in the 1st percentile. (AR 674.) It was stated, however, that the passages used in this test "are more typical of college level reading," which she would not need to reach to pass the GED test. (AR 674.)

The examiner concluded that Plaintiff had a "relatively strong score in math calculation." (AR 675.) "Her Writing Fluency and Writing Samples are both in the average range, indicating average or better cognitive abilities with those types of tasks." (AR 675.) She was diagnosed with "a Learning Disorder Not Otherwise Specified." (AR 675.)

The ALJ noted that Plaintiff was diagnosed with a learning disability, but stated that "[d]espite this diagnosis, the claimant achieved strong scores in math calculation and average scores in writing fluency." (AR 26.) The ALJ later referenced Plaintiff's learning disability, but said Plaintiff was able to perform basic mathematical calculations, read, write and handle money.

1    (AR 27.)

2        The ALJ did not mention that Plaintiff was only described as doing "relatively well" on

3    the math portion of the exam, and that she was still only in the 21st percentile, or that she was

4    rated at only a fifth grade level in math on other tests. Nor did she discuss the fact that, as will be

5    discussed *infra*, Dr. Meinz evaluated Plaintiff with a learning disability in math as well.

6    Plaintiff's writing scores on this test were average, but the ALJ wholly failed to account for the

7    fact that all of the tests administered reveal markedly low scores in reading and spelling.

8        On April 11, 2006, a memory assessment was performed by Dr. Faulder Colby. (AR 590-

9    598.) Dr. Colby stated, *inter alia*, that "[w]hile cognitive testing, at face value, suggested that she

10   could be seriously impaired intellectually and in other ways, effort assessment raised serious

11   doubts about the validity of her regular test data." (AR 591.) Nevertheless, Dr. Colby

12   recommended that Plaintiff could likely qualify for SSI benefits despite the evidence of symptom

13   exaggeration in the cognitive area. (AR 591.) Dr. Colby assessed Plaintiff as being of

14   "borderline" intelligence, with a notation that "she did not give the RSPM her best efforts … so

15   it was difficult [to] estimate accurately." (AR 595.) Dr. Colby elaborated on this, stating

16   "sometimes, she may have been doing her best, while other times, she may not. Unfortunately, it

17   is impossible to tell when she was doing one thing and when another in the rest of the testing."

18   (AR 596.) It should be noted, however, that Dr. Colby was assessing Plaintiff's memory, and not

19   other aspects of cognitive ability, including reading, writing, verbal skills, or math, and

20   Dr. Colby still assessed Plaintiff as having borderline intelligence.

21       On May 10, 2004, Plaintiff underwent a psychological evaluation with Dr. Meinz. (AR

22   926-932.) He administered the WAIS-III test for intellectual functioning and she scored a 78,

23   which is in the "[b]orderline range, at the 7th percentile." (AR 929.) The WRAT II test was

24   administered, which provides an assessment of academic skill levels, and Plaintiff was assessed

25   as reading at a 5th grade level, spelling at a 2nd grade level, and arithmetic was also at a 5th

26   grade level. (AR 929.) Dr. Meinz concluded: "cognitive and skill testing revealed Ms. Rowley to

27   present with learning disabilities in reading, spelling, and math skill development." (AR 930.) He

28   opined that she "certainly would be capable of comprehending verbal instructions that were

straightforward and concrete" and "as long as they are phrased in words found in everyday speech." (AR 930.)

Dr. Meinz did describe her behavior as "extremely histrionic and dramatic," and stated that at times there was "a certain malingering or symptom magnification" (AR 928, 930) While Dr. Meinz described Plaintiff as dramatic, exaggerating, malingering, and manipulative, these comments were not directed towards her cognitive abilities, which he reiterated were low despite symptom magnification. In fact, when opining about her employability, he recommended "a return to part-time work, perhaps 10 to 15 hours a week as a janitor or something of that ilk *where her limited verbal cognitive functioning and academic skill deficits won't come into play*. She appears very capable of at least this level of work." (AR 931, emphasis added.)

The ALJ did mention Dr. Meinz's opinion that Plaintiff could only work part-time in a position that could accommodate her limited cognitive functioning. (AR 27.) The ALJ stated: "I accord [this] opinion[ ] little weight, as [it is] inconsistent with the record as a whole. As noted, although the claimant has been diagnosed with a learning disability, she is able to do basic math, read, write and handle money." (AR 27.)  She went on to state that Dr. Meinz's opinion relied "heavily on the claimant's less than credible subjective statements, [and] cannot be considered a reliable or reasonable assessment of the claimant's level of functioning." (AR 27.) The ALJ did not make note of the results of the tests administered by Dr. Meinz. Nor did she discuss that despite the fact that Dr. Meinz found Plaintiff less than credible in some areas, this did not affect his opinion regarding her cognitive abilities.

Finally, Plaintiff's treating therapist mentioned her intellectual deficits on several occasions. On October 8, 2012, Plaintiff's therapist noted that her intelligence appeared in the low range. (AR 1060.) On January 27, 2012, her therapist indicated she had deficits in memory, abstract thinking and intelligence. (AR 1807.) On January 3, 2011, her therapist described as having "slightly below average" intellectual function. (AR 1024.)

In sum, the court finds that the ALJ did not mention the majority of the evidence discussed, *supra*, that contradicts the ALJ's assessment of Plaintiff as having a "limited," *i.e,* 9th grade education. While the ALJ did discuss the fact that Plaintiff had a learning disability, the

1   reasons given for discrediting that fact (she scored well in math and writing, and the doctors

2   found her less than credible) are not supported by the record.

3          As Plaintiff points out the jobs identified by the ALJ both require a language level 2,

4   which is described as follows:

5          Passive vocabulary of 5,000 to 6,000 words. Read at rate of 190-215 words per

6          minute. Read adventure stories and comic books, looking up unfamiliar words in
           dictionary for meaning, spelling, and pronunciation. Read instructions for

7          assembling model cars and airplanes.

8   DOT 209.587-010 (addresser); DOT 209.687-026 (mail clerk), 1991 WL 671813. It is not clear

9   that Plaintiff's reading and spelling abilities are consistent with language level 2, and her

10  limitations in this area were not conveyed to the VE.

11         The Commissioner focuses on the argument that some of the psychologists, found

12  Plaintiff less than credible. Dr. Colby found that Plaintiff may not have been putting forth her

13  best effort on the tests administered, but Dr. Colby was assessing Plaintiff's memory and did not

14  administer tests related to Plaintiff's ability to read or spell. While Dr. Meinz found Plaintiff to

15  be less than credible in some areas, his credibility finding did not apply to the empiric testing

16  regarding her cognitive abilities, which he maintained were low.

17         In sum, the ALJ failed to consider the evidence in the record that contradicts Plaintiff's

18  formal level of education and did not set forth all of Plaintiff's limitations to the VE; therefore,

19  the ALJ erred. *See, Valentine*, 574 F.3d at 690.

20  **E. Examining Psychologists**

21         **1. Plaintiff's Argument**

22         Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment,

23  credibility finding or step five decision because the ALJ erroneously evaluated the opinions of

24  the examining psychologists. (Doc. # 11 at 25-27.) Plaintiff asserts that the ALJ gave "great

25  weight" to examining psychologist Dr. Chang's January 2008 report, but argues that substantial

26  evidence does not support the ALJ's RFC assessment because Dr. Chang did not provide

27  opinions about Plaintiff's work-related limitations and never stated what Plaintiff could or could

28  not do in functional terms. (*Id.* at 25.) Instead, Dr. Chang stated that Plaintiff was "resilient and

1   would like to serve other people who went through as an unfortunate [a] past as she has." (*Id*.)

2   Plaintiff also contends that the ALJ erroneously evaluated the opinions of examining

3   psychologist Dr. Meinz in May 2004. (*Id*. at 26.) Dr. Meinz recommended that Plaintiff return to

4   part-time work, perhaps ten to fifteen hours per week, as a janitor or similar job consistent with

5   her diminished intellect and academic deficits. (*Id*.) Plaintiff asserts that ALJ's rejection of this

6   opinion is not supported by substantial evidence because the ALJ did not find that Plaintiff could

7   perform work like a janitor, but instead work that involves reading and writing. (*Id*.) In addition,

8   Plaintiff asserts that if she could only work part-time, then she is disabled as a matter of law

9   pursuant to Social Security Ruling 96-8P. (*Id*. at 26.)

10   Finally, Plaintiff argues that the ALJ erroneously evaluated examining psychologist

11   Dr. Bartlett's May 2009 opinions that, *inter alia*, Plaintiff could not interact appropriately with

12   co-workers and could not cope with the competitive demands of work, including attendance and

13   performance. (Doc. # 11 at 27.) The ALJ rejected Dr. Bartlett's opinions based on Plaintiff's

14   activities of daily living and childcare. (*Id*.) Plaintiff contends that the ALJ did not explain how

15   living in a household and taking care of children shows the ability to cope with the stress of

16   competitive employment. (*Id*.) In addition, Plaintiff asserts that the ALJ imputed to Dr. Bartlett

17   heavy reliance on Plaintiff's subjective beliefs, but Dr. Bartlett administered extensive

18   psychometric testing and a clinical examination. (*Id*.)

19   Plaintiff requests that the court find that Plaintiff was clearly disabled because she could

20   not work full time, or remand for proper evaluation of the opinions of these examining sources.

21   (*Id*.)

22   **2. The Commissioner's Argument**

23   With respect to Dr. Chang, the Commissioner argues that Plaintiff's argument "is too

24   undeveloped to merit review" and Plaintiff's "fleeting reference is insufficient to preserve the

25   claim that the ALJ erred in her assessment of Dr. Chang." (Doc. # 16 at 11.) Even if Plaintiff did

26   properly raise the issue, the Commissioner contends that the ALJ's decision to assign "great

27   weight" to Dr. Chang's opinion is supported by substantial evidence in the record. (*Id*. At 11-12.)

28   Next, the Commissioner asserts that the ALJ properly assessed Dr. Meinz's opinion by

1    finding it was inconsistent with the medical evidence as a whole. (*Id*. At 13.) In addition, the

2    Commissioner states that the ALJ noted that the doctor's own suspicions as to Plaintiff's

3    credibility called into question his ultimate conclusions regarding her mental functioning. (*Id*.)

4    Finally, the Commissioner argues that the ALJ properly determined that Dr. Bartlett's

5    opinion was unsupported by the medical evidence as well as Plaintiff's reports of her daily

6    activities, including caring for her own personal needs and those of her three minor children. (*Id*.

7    at 14.) In addition, the ALJ noted that Dr. Bartlett's opinion relied heavily on Plaintiff's

8    subjective beliefs, which the ALJ deemed not credible.

9    **3. Analysis**

10   "'In disability benefits cases ... physicians may render medical, clinical opinions, or they

11   may render opinions on the ultimate issue of disability—the claimant's ability to perform

12   work.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157

13   F.3d 715, 725 (9th Cir. 1998)). "'In conjunction with the relevant regulations, [the courts] have

14   ... developed standards that guide our analysis of an ALJ's weighing of medical evidence.'"

15   *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir.

16   2008)). Courts "'distinguish among the opinions of three types of physicians: (1) those who treat

17   the claimant (treating physicians); (2) those who examine but do not treat the claimant

18   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

19   physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

20   1995)). "'As a general rule, more weight should be given to the opinion of a treating source than

21   to the opinion of doctors who do not treat the claimant.'" *Id*.; *see also* 20 C.F.R.

22   § 404.1527(c)(2). "[T]he opinion of a treating physician is thus entitled to greater weight than

23   that of an examining physician, [and] the opinion of an examining physician is entitled to greater

24   weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (citing *Ryan*, 528

25   F.3d at 1198). Here, Plaintiff challenges the weight the ALJ accorded to three examining

26   physicians.

27   "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion,

28   an ALJ may only reject it by providing specific and legitimate reasons that are supported by

substantial evidence.'" *Id.* "[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison,* 759 F.3d at 1012 (quoting *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725.) "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.*

The Ninth Circuit has identified several reasons for discounting a physician's assessment which it finds legitimate: if the assessment is contradicted by the physician's own medical records, *Tommasetti*, 533 F.3d at 1041 (citation omitted); "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible (*id.*) (internal quotation marks and citation omitted); if it is in conflict with testimony from the claimant him or herself, *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995); if the opinions are unsupported by the record as a whole, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

### a.  Dr. Chang

As mentioned above, Plaintiff underwent a consultative psychiatric evaluation with Dr. Chang. (AR 783-785.) Dr. Chang recounted Plaintiff's reports concerning her psychiatric issues, which date back to a young age and involve sexual and physical abuse and violence, as

1   well as stressors involved in raising her three minor children as a single parent. (AR 783.)

2   Dr. Chang then briefly recounted Plaintiff's reported daily activities which included getting her

3   children to school and attending therapy sessions for herself and her children, and struggling

4   with her children once they get home from school. (AR 784.) She reported she had no social life

5   and needed someone with her to go shopping, and did not go to church any longer. (AR 784.)

6   Dr. Chang indicated Plaintiff wore casual clothing, but was in "fair cleanliness." (AR 784.)

7   Dr. Chang then described Plaintiff as having a defiant attitude in the beginning which slowly

8   mellowed as the interview progressed. (AR 784.) Plaintiff said "it is hard to talk about all the

9   things she has gone through and at a number of points she sobbed." (AR 784.) Plaintiff stated

10  that she always feels depressed and lacks energy. (AR784.) She admitted to having "frequent

11  episodes of high and hypomanic behavior during which she feels she can achieve anything and

12  get anything" which are followed by feelings of anger and depression. (AR 784.) She reported

13  sleeping five hours. (AR 784.)

14       Dr. Chang assessed Plaintiff as "oriented in all spheres," with her memory in normal

15  range, with fair insight and judgment, and a small fund of common knowledge which Dr. Chang

16  said was "most likely because she is not interested in current events." (AR 785.) Dr. Chang

17  commented that Plaintiff has a history of severe sexual abuse, substance abuse, and abusive

18  relationships with men, attends counseling four times a week, has been depressed for many years

19  with hypomanic episodes, and was taking medications. (AR 785.) She also stated that Plaintiff

20  lived with her three sons, with whom she struggled daily. (AR 785.) Dr. Chang then opined:

21  "[S]he is still resilient and would like to do work to serve other people who went through as

22  unfortunate past as she has. And she has been very motivated in her treatment." (AR 785.)

23       The ALJ gave Dr. Chang's opinion "great weight," citing Dr. Chang's statement that

24  Plaintiff was defiant at first, and then mellowed; that Plaintiff denied suicidal ideations,

25  delusions or hallucinations; and Dr. Chang's opinion that Plaintiff seemed resilient

26       The court finds that the ALJ's reasons for assigning Dr. Chang's opinion "great weight,"

27  when faced with contradictory opinions of Dr. Meinz and Dr. Bartlett, are not supported by

28  substantial evidence in the record. First, Dr. Chang's opinion itself is contradicted by her own

report. Dr. Chang's report paints a very bleak picture of Plaintiff, acknowledging her history of severe abusive relationships, depression and hypomanic episodes, along with a chaotic household. Dr. Chang then opines that Plaintiff is resilient, but includes no explanation for her "cheery" prognosis for Plaintiff and no explanation can be reasonably implied from her report. Even if there was support for Dr. Chang's opinion that Plaintiff was "resilient" and "motivated," Dr. Chang did not reconcile this with Plaintiff's history of traumatic events and depression.

Nor is Dr. Chang's opinion supported by any of the notes of Plaintiff's treating mental health providers. As the ALJ pointed out, Plaintiff's treating psychiatrist, Dr. Yasar, indicated that Plaintiff had limited insight; a depressed mood; dysphoric affect; below average intellectual functioning; was distractible; had impaired impulse control; reported insomnia, depressed mood, anxiety, poor concentration, poor self-esteem, poor self-interest and low energy. (AR 1026-1034.) He assessed her as having poor mood regulation, severe depression, anxiety, inattentiveness and a learning disorder. (AR 1034.) He also observed that her mental problems were exacerbated by external stressors. (AR 1034.)

A psychiatrist at Mojave Adult, Child & Family Services (where Plaintiff received mental health care for a period of time), Dr. Johanna Dekay, asserted that Plaintiff had a history of physical, emotional and sexual abuse throughout her life, engaged in substance abuse and "emerged with significant mood and anxiety symptoms." (AR 1055.) Dr. Dekay also found that Plaintiff's "mood greatly impacts her ability to function." (AR 1055.) Another provider at Mojave described Plaintiff as having a depressed mood with intelligence in the low range and poor concentration. (AR 1060.) She acknowledged having suicidal ideations in the recent past. (AR 1060.) She experiences guilt and shame regarding her parenting. (AR 1061.) This provider assessed her as "seriously mentally ill." (AR 1063.) Her providers at Mohave also noted that Plaintiff reported at one point drinking alcohol to the point of blacking out. (AR 1009.) Her treatment records consistently note anger problems and difficulty interacting with others; she was overwhelmed with her children and parenting; was diagnosed with a learning disability; she had fear, irritability, anger and a desire to isolate.

Therefore, the court agrees with Plaintiff that the ALJ erred in assigning Dr. Chang's

opinion "great weight" as it is not supported by substantial evidence in the record.

### b. Dr. Meinz

Dr. Meinz's opinions are summarized above. The ALJ accorded his opinion "little weight," stating that it was inconsistent with the record as a whole. (AR 27.) First, the ALJ stated that while Plaintiff was diagnosed with a learning disability, she was able to do basic math, read, write and handle money. (AR 27.) As the court discussed, *supra*, this statement is not supported by substantial evidence in the record. Plaintiff consistently scored very poorly in reading and spelling and her math scores were "relatively" better. (AR 27.)

Next, the ALJ states that the records show that many of Plaintiff's stresses and limitations stem not from cognitive abilities, but from raising three children on her own, and despite her struggles she was able to perform as a single parent for over a decade. (AR 27.) It is true that Plaintiff frequently reported struggling with her three children, but this was in addition to her reports of suffering from depression and PTSD stemming from traumatic events in her life, which the ALJ seems to have ignored. Moreover, the ALJ ignored or insufficiently rejected evidence concerning Plaintiff's cognitive abilities (as discussed, *supra*).

The ALJ mentions that Plaintiff attempted to better herself by getting a GED, but dropped out of the program not due to her learning disability but because of financial stresses and difficulty with her children. (AR 27.) This fact could also serve as evidence of the difficulty Plaintiff might have in the workplace.

The ALJ then discusses that the records indicate that "while the claimant was often irritable and agitated with others, she was able to calm herself and cooperate with others, as she did on examination with Dr. Colby." (AR 27.) The record is replete with reports of Plaintiff's anger issues and difficulty interacting with others, including violent outbursts and the destruction of property. (*See, e.g.,* AR 1022, 1050-51.) The fact that she was able to compose herself while meeting on one occasion with a Dr. Colby is not substantial evidence to contradict the many instances documented in the records where Plaintiff had difficulty dealing with others.

The ALJ's final reason for according Dr. Meinz's opinion "little weight" is that Dr. Meinz himself found Plaintiff to be less than credible, and because his opinion "rel[ied]

heavily on the claimant's less-than-credible subjective statements," Dr. Meinz's opinion could not be considered reliable or a reasonable assessment of Plaintiff's level of functioning. (AR 27.)

Dr. Meinz did state that he "sensed that some of [Plaintiff's] demonstrative behavior was quite superficial and … she could psycho-manage it anytime she so chose." (AR 928.) He also stated that "[t]here was at times what I detected to be a certain malingering or symptom magnification" which Dr. Meinz believed "was designed to cover for cognitive deficits and low self-esteem." (AR 928.) Nevertheless, Dr. Meinz continued to reinforce that Plaintiff had cognitive difficulties irrespective of the fact that he found some of her accounts incredible. (*See* AR 930.) Moreover, Dr. Meinz's finding regarding Plaintiff's employability−that she could return to part-time work "as a janitor or something of that ilk"−hinged on his finding that she had "limited verbal cognitive functioning and academic skill deficits." (AR 931.) The ALJ failed to recognize the distinction between Dr. Meinz's conclusion that Plaintiff was dramatic and even manipulative, and his findings relative to her cognitive abilities which relied not on Plaintiff's subjective complaints, but on psychometric test results.

In sum, the ALJ's decision to give "little weight" to Dr. Meinz's opinion is not supported by substantial evidence in the record.

### c. Dr. Bartlett

The ALJ assigned "little weight" to examining psychological consultant Dr. Bartlett's opinion. The ALJ noted that Dr. Bartlett opined Plaintiff suffered from "severely compromised expressive and receptive skills, with associated deficiencies for reading, spelling, and math," but the ALJ found this was "inconsistent with the overall treatment record." (AR 28.) The ALJ stated that Plaintiff scored well in math calculation and average in writing on an earlier examination for learning disabilities. (AR 28.) As with Dr. Meinz, the ALJ gave "little weight" to Dr. Bartlett's opinion because Dr. Bartlett "appears to rely heavily on the claimant's subjective beliefs regarding her own abilities" while the "[r]ecords show the claimant was able to function independently of others and care for her three children, albeit with some help from others." (AR 28.)

The ALJ's reasons for assigning Dr. Bartlett's opinion little weight are not supported by

substantial evidence in the record. As the court discussed, *supra*, while Plaintiff did "relatively well" on the arithmetic portion of an administered test, the ALJ ignores the fact that Plaintiff consistently performed very poorly on the verbal portion of these examinations, and that her math results were only "relatively" better. Nor does the ALJ reconcile Plaintiff's poor performance in the verbal arena with the language level 2 required by both of the jobs identified by the ALJ as those Plaintiff is capable of performing.

The ALJ also states that she assigned Dr. Bartlett's opinion "little weight" because it relies on Plaintiff's subjective statements, but the only instance of this highlighted by the ALJ is that Plaintiff was able to function independently of others and care for her three children as a reason. The record, however, is riddled with entries describing Plaintiff's inability to interact well with others, history of anger management issues, including instances where she instigated fights, became aggressive with others, and became verbally abusive with other medical providers. (*See, e.g.,* AR 708, 710, 719, 730, 736, 747, 836, 842, 850, 869, 917, 928, 1008, 1038, 1040, 1051-52, 1062.) Moreover, while Plaintiff was raising three children, her mental health records consistently identify this as a profound stressor in her life, with Plaintiff asserting that she felt she could not manage her children, was overwhelmed by them, that she felt guilt when faced with their misbehavior and that this stress obstructed her ability to deal with her own issues. (*See, e.g.,* AR 701-02, 707, 710, 714, 719, 721, 730, 745, 771, 773, 825, 829, 831, 834, 954, 966, 973, 974, 975-77, 979, 981, 985, 1006, 1045, 1059, 1061.)

As such, the ALJ's decision to accord Dr. Bartlett's opinion "little weight" on this basis is not supported by substantial evidence in the record.

## c. Conclusion

In sum, the court concludes that the ALJ erred in according the opinion of Dr. Chang "great weight" and the opinions of Dr. Meinz and Dr. Bartlett "little weight" as these determinations are not supported by substantial evidence in the record.

## F. Reopening of Past Applications

Plaintiff argues that Plaintiff's August 2007 DIB and SSI applications alleging an onset date of March 14, 2002, were implied requests to reopen the earlier otherwise final and binding

determinations with respect to her earlier DIB and SSI applications. (Doc. # 11 at 28-29.)

The Commissioner argues that a reading of the transcripts reveals Plaintiff never requested re-opening, there was no implied reopening, and there is no basis for re-opening those prior applications. (Doc. # 16 at 16-17.)

If a claimant is "dissatisfied with a determination or decision made in the administrative review process, but [does] not request further review within the stated time period, [the claimant] lose[s] [his or her] right to further review and that determination or decision becomes final." 20 C.F.R. § 416.1487(a), § 404.987(a). "However, a determination or a decision … which is otherwise final and binding may be reopened and revised[.]" *Id*. This may be done by the SSA on its own initiative or the claimant may request that a determination be reopened. 20 C.F.R. § 416.1487(b), § 404.987(b).

"A determination, revised determination, decision, or revised decision may be reopened", *inter alia*, "(a) Within 12 months of the date of the notice of the initial determination, for any reason; (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case [for DIB cases]" and "(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case [for SSI cases][.]" 20 C.F.R. § 416.1488(a), (b), § 404.988(a), (b).

There is "good cause to reopen a determination or decision if−(1) New and material evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was made; or (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 416.1489(a), § 404.989(a). If, however, "the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made," there is not "good cause" to reopen. 20 C.F.R. § 416.1489(b), § 404.989(b).

The court need not consider whether or not Plaintiff can impliedly request reopening of a determination, because even if she could, she acknowledges her implied requests would be subject to the "good cause" showing under 20 C.F.R. § 416.1488(b), § 404.988(b), 20 C.F.R. § 416.1489(a), § 404.989(a), and she failed to demonstrate "good cause" exists for reopening these

1    determinations. In fact, Plaintiff asserts no grounds for reopening the earlier determinations other

2    than her position that it should be done. (Doc. # 11 at 28-29.) As such, Plaintiff's request to

3    reopen the earlier determinations should be denied.

4    **G. Remand for Further Proceedings or Remand for Calculation and Award of Benefits**

5            The court has found that the ALJ erred in evaluating the opinions of the non-examining

6    psychological consultants; in disregarding the evidence concerning Plaintiff's limited cognitive

7    abilities in connection with the ALJ's determination of Plaintiff's education level at step five;

8    and in evaluating the opinions of the examining psychological consultants. The court must now

9    determine whether to remand the matter to the ALJ for further proceedings, or remand to the

10    ALJ for calculation and award of benefits. *See Garrison*, 759 F.3d at 1018-19.

11          "Usually, '[i]f additional proceedings can remedy defects in the original administrative

12    proceeding, a social security case should be remanded.'" *Id.* at 1019 (quoting *Lewin v.*

13    *Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). "The Social Security Act, however, makes clear

14    that courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with *or*

15    *without* remanding the cause for a rehearing.'" *Id.* (quoting 42 U.S.C. § 405(g) (emphasis

16    added)). In appropriate cases, the court may remand to the ALJ with instructions to award

17    benefits. *Id.* (citations omitted).

18          "'[W]here there are no outstanding issues that must be resolved before a proper disability

19    determination can be made, and where it is clear from the administrative record that the ALJ

20    would be required to award benefits if the claimant's excess pain [or medical opinion] testimony

21    were credited, we will not remand solely to allow the ALJ to make specific findings regarding

22    that testimony. Rather, we will ... take that testimony to be established as true.'" *Id.* (quoting

23    *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)). This is known

24    as the "credit-as-true" rule. *Id.* The reasoning for this is:

25        Requiring the ALJs to specify any factors discrediting a claimant at the first
        opportunity helps to improve the performance of the ALJs by discouraging them
26        from reaching a conclusion first, and then attempting to justify it by ignoring
        competent evidence in the record that suggests an opposite result ... Moreover, it
27        avoids unnecessary duplication in the administrative hearings and reduces the
        administrative burden caused by requiring multiple proceedings in the same case
28        ... [It also] reduces the delay and uncertainty ... and ensures that deserving
        claimants will receive benefits as soon as possible ... [I]f grounds for [concluding

that a claimant is not disabled] exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.

*Id*. at 1020 (quoting *Varney*, 859 F.2d at 1398-99).

The Ninth Circuit has developed a three-part standard for the credit-as-true rule to determine whether a case must be remanded to the ALJ with an order to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*. (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Smolen*, 80 F.3d at 1292). If the record is "uncertain and ambiguous, the proper approach is to remand the case to the agency" for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

The credit-as-true rule, however, provides "some flexibility." *Garrison,* 759 F.3d at 1021 (citing *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)). In describing the nature of this flexibility, the Ninth Circuit recently stated: courts must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the court has found that the ALJ failed to provide legally sufficient reasons for evaluating the opinions of the examining psychological consultants, rejecting the opinions of the non-examining psychological consultants, and ignored relevant evidence regarding Plaintiff's cognitive abilities.

Remand to the ALJ for development of the record would be appropriate insofar as the additional restrictions imposed by the nonexamining psychological consultants and Plaintiff's educational level are concerned. First, the ALJ could pose a hypothetical to the VE that incorporates the additional restrictions imposed by the nonexamining psychological consultants to determine whether Plaintiff can still do other work available in significant numbers in the

national economy. Second, the ALJ could consider the evidence relative to Plaintiff's limited verbal cognitive abilities, and in particular her low scores in reading and spelling, and re-assess her educational level and pose any necessary additional information to the VE. That said, remand is not necessarily required to make a new RFC determination. *See* Garrison, 759 F.3d at 1021 n. 28 ("In no prior credit-as-true case have we suggested that an award of benefits is proper only if the ALJ made a formal RFC finding….").

Regardless, there is no basis for further development of the record with regard to the opinions of examining psychologists Dr. Meinz and Dr. Bartlett. The Ninth Circuit has instructed that the court may not remand the matter only to allow "the ALJ to revisit the medical opinions…she rejected for legally insufficient reasons[.]" *Garrison*, 759 F.3d 995. If Dr. Meinz's opinion is credited as true, under the third part of the credit-as-true standard, it is clear the ALJ would be required to find Plaintiff disabled on remand because he opined Plaintiff could return to part-time work. (AR 931.) This is because, as the SSA has interpreted its regulations, RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184 (Jul. 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* Crediting Dr. Meinz's opinion as true, Plaintiff is not capable of working on a "regular and continuing basis." The SSA clarified that "[t]he ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process;" however, here, in determining Plaintiff's ability to do other work at step five of the sequential evaluation process, Dr. Meinz's opinion that Plaintiff could do part time work necessitates a finding of disability. *See id.*, n. 2; *see also Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980) (ability to work a few hours a day or on an intermittent basis is not substantial gainful activity) (citing *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978); *Austin v. Celebrezze*, 230 F.Supp. 256, 259 (S.D. Tex. 1964); *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980)).

Moreover, the court would also credit Dr. Bartlett's opinion as true, and she opined Plaintiff could not work at all.

1    Additionally, if this matter were remanded for further proceedings, the ALJ would be

2    presented with the medical opinions of examining consultants, Dr. Chang, Dr. Colby, Dr. Meinz

3    and Dr. Bartlett, as well as the non-examining consultants' opinions. The court found the ALJ

4    erred in according Dr. Chang's "great weight" because it was internally inconsistent and not

5    supported by substantial evidence in the record; and the opinions of the nonexamining

6    psychologists.

7    Dr. Colby stated: "There is little doubt in my mind that this unfortunate woman has some

8    serious psychological impairments." (AR 598.) Dr. Colby opined that "there is a reasonable

9    chance that either an Axis I diagnosis of PTSD, and AXIS II diagnosis of Borderline Personality

10   Disorder, or both, plus a fairly low level of functioning would be sufficient to qualify her for

11   receiving SSI benefits." (AR 598.) While Plaintiff has not asserted an argument relative to

12   Dr. Colby's testimony, the ALJ's reasons for giving Dr. Colby's opinion "little weight" are by

13   and large the same as those asserted with respect to Dr. Meinz, which the court found were not

14   supported by substantial evidence in the record. (*See* AR 27.) In addition, while Dr. Colby

15   commented that it was unclear whether Plaintiff put her best efforts into the testing administered

16   to her, but Dr. Colby was evaluating Plaintiff's memory, which is not at issue, and Dr. Colby's

17   statements were not directed toward Plaintiff's documented mental illnesses. (AR 597-98.) In

18   fact, Dr. Colby said that "[a] personality screening tool supported the possibility that [Plaintiff] is

19   seriously emotionally impaired[.]" (AR 598.)

20   Dr. Meinz opined Plaintiff could return to part time work. Dr. Bartlett opined Plaintiff

21   was not capable of working. Her treating psychiatrists observed that her mood greatly impacted

22   her ability to function (AR 1055), and that she had below average intellectual functioning (AR

23   1024).

24   While the nonexamining consultants opined Plaintiff retains some capacity for work, the

25   nonexamining consultants' opinions, by themselves cannot "constitute substantial evidence that

26   justifies the rejection of the opinion of either an examining or a treating physician." *Ryan v.*

27   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d

28   821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996)).  Thus, if the medical opinions are given

their appropriate weight and the opinions of Dr. Meinz and Dr. Bartlett are credited as true, the ALJ would be required to find Plaintiff was disabled on remand.

Having concluded that Plaintiff satisfies the three-part test for the credit-as-true analysis, the court must now determine whether to exercise "flexibility" and remand for further proceedings. The court has independently reviewed the entire record which reflects that Plaintiff was subject to sexual as well as physical abuse starting in her childhood years and extending to adulthood. She sought to self-medicate through drug and alcohol abuse, which are reportedly in remission. She is a single mother of three minor children. She has been receiving psychological treatment and her children were in therapy as well related to their own disabilities. She consistently complained of a depressed mood, mood swings, irritability, anger, a desire to isolate herself from others, and of feeling stressed and overwhelmed related to caring for her children. She has received diagnoses of depression, PTSD, as well as bipolar disorder and borderline personality disorder. She had attempted suicide in the past, and occasionally expressed suicidal ideations. She battled anger and irritability, and had a history of reporting to violence when her moods were not under control. She completed formal schooling through the ninth grade through special education classes, and has since been diagnosed with a learning disability and consistently receives very poor scores in reading and spelling on administered tests. Her treating providers have assessed her mental issues as impairing her ability to function, and she has been classified as seriously mentally ill.

The Commissioner argues that Plaintiff's allegations of debilitating impairment are inconsistent with objective medical evidence and an ongoing list of daily activities, including caring for her three minor children and pets. (Doc. # 16 at 19.) The Commissioner does not elaborate on this argument, but in her decision, the ALJ consistently acknowledged Plaintiff's reports of a depressed mood, mood swings, irritability, anger, anxiety, and isolationism, yet pointed to clinical findings that Plaintiff's appearance, thought process, orientation, cognitive functioning, motor activity, speech, insight and judgment were appropriate, her behavior cooperative and friendly, and was well groomed. (AR 25-26.) The ALJ also noted that Plaintiff frequently reported being overwhelmed and stressed related to caring for her three children, but

1    countered this with the statement that her records did not "show any deterioration in [her] mental

2    condition" and she was able to interact appropriately with her therapist and perform all activities

3    of daily living independently. (AR 26.)

4         The ALJ acknowledges that Plaintiff received counseling for anger problems and

5    difficulty interacting with others. (AR 26.) In addition, the ALJ admits Plaintiff continued to

6    "struggle with childcare issues, anger problems, and lack of energy." (AR 26.) Nevertheless, the

7    ALJ reasoned that Plaintiff's records showed Plaintiff "was cooperative and her thought content

8    appropriate." (AR 26.) Plaintiff continued to seek mental health treatment when she and her

9    family moved to Nevada in 2010. (AR 26.) She continued to complain of paranoid thoughts and

10   hallucinations. (AR 26.) Again, the ALJ discredits her reported symptoms on the basis that

11   Plaintiff, while initially rude in an examination, became calm and cooperative. (AR 26.)

12        The ALJ's findings seemingly ignore or are too dismissive of what the ALJ herself

13   termed as Plaintiff's continuing "struggle" with her mental health issues. The ALJ's reliance on

14   Plaintiff's ability to be cooperative with her psychologist−a person trained in mental states and

15   human behavior−in a professional medical office, is misplaced considering that Plaintiff was

16   seeking treatment related to, *inter alia*, her anger, irritability, and difficulty interacting with

17   others. While her thought process, speech and judgment often were noted as appropriate, her

18   treating mental health providers continued to note her mental health struggles and her diagnoses

19   of depression and PTSD persisted. In addition, on other occasions they often commented that she

20   had limited judgment, insight, and impulse control, a restricted affect, below average intellectual

21   functioning, racing thoughts and pressured speech, wore pajamas and slippers to appointments,

22   had deficits in memory, abstract thinking and intelligence, suicidal ideations, hearing things and

23   paranoia. (*See, e.g.,* AR 1007, 1021, 1023-24.)

24        The court disagrees with the Commissioner's argument that there is doubt as to whether

25   Plaintiff is disabled because she is able to care for her three children and two pets. This ignores

26   the ample evidence in the record that Plaintiff consistently complained of feeling overwhelmed

27   and stressed related to her responsibility of caring for her three children, whom she frequently

28   reported as having behavioral issues, required counseling in and of themselves, and had truancy

and disciplinary issues. She frequently reported that once she took care of the children and got them off to school, she would often sleep for the rest of the day until they got home. She reported that she had to force herself to maintain the house and provide food for her children. There are references in the record to her isolating herself and her children in the home, not leaving and drawing all the shades. Plaintiff often missed appointments due to a lack of child care. This evidence is not consistent with the conclusion that Plaintiff can mentally function on a level sufficient to sustain work on a regular and continuing basis. The ALJ does not explain how Plaintiff's ability to care for two pets transfers into an ability to engage in continuous work. Instead, her daily activities are consistent with her stated impairments.

The issues with the ALJ's conclusions regarding Plaintiff's learning disability have been discussed at length, *supra*.

In sum, the court finds there is no reason to doubt that Plaintiff is in fact disabled. A remand for calculation and award of benefits is therefore required.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (Doc. # 11) be **<u>GRANTED</u>**, and that the Commissioner's Cross-Motion to Affirm (Doc. # 16) be **<u>DENIED</u>**, and that the matter be remanded to the ALJ for the calculation and award of benefits.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: April 30, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE